We'll hear argument first this morning in case 22674, Campos-Chaves v. Garland and the consolidated case. Mr. McLeod. Thank you, Mr. Chief Justice, and may it please the Court. Each of the noncitizens in these cases failed to attend a removal hearing after receiving written notice of the time and place of that hearing. Under the rule adopted by the Ninth Circuit, however, the noncitizens can rescind their in absentia removal orders based on a supposed lack of notice. That holding defies text, context, and common sense. And it threatens to unsettle hundreds of thousands of in absentia orders that have been entered over the course of nearly three decades. In reaching that extraordinary result, the Ninth Circuit misread the statutory scheme and this Court's decisions in Pereira v. Chaves. As to the statute, the Ninth Circuit is wrong that the omission of time and place information in a notice to appear renders all subsequent notices invalid. Congress created two distinct forms of notice, and it made both of them potential grounds for in absentia removal. The removal orders in these cases were based on notices of hearing that specified a new time and place for the removal proceedings and that warned the noncitizens of the consequences of failing to attend those proceedings. That's all Section 1229 requires for a notice of hearing to be valid. As to Pereira v. Chaves, we acknowledge that the Court is not writing on a blank slate when it comes to notices to appear, but Pereira v. Chaves do not decide these cases. The question presented today was not briefed in those cases, was not argued in those cases, and was not necessary to resolve in those cases. The Court's narrow decisions do not create the sweeping defense to removal that the noncitizens here seek. I welcome the Court's questions. Well, Mr. McCloud, Pereira seems to work against you, so I think it would be good for you to spend a bit of time on that. Certainly, Your Honor. So I think that the important thing about Pereira is that it was a narrow decision that decided a particular question presented, and that question presented was about the interaction between the stop-time rule in 1229DD1 and the notice to appear requirement. And if I could point to where in the Court's opinion that holding appears, it's at the beginning of Part 2B of the opinion. This is on page 2114 of the Supreme Court Reporter Version, if you have that available. And at the beginning of the first paragraph of that section of the opinion, the Court says the statutory text alone is enough to resolve this case. It then proceeds to analyze the text of the two provisions that I just referenced. Now, it's true that after this point in the opinion, there is additional analysis, but I think much of that additional analysis is dicta. The Court said that that analysis supported or bolstered or reinforced the conclusion it had already reached. And I think that's particularly true of the statements that the noncitizens and the Ninth Circuit have relied on in Pereira. To go directly to the statement about the meaning of change, the meaning of change was not briefed in Pereira, was not argued in Pereira, and so the Court in Pereira did not have before it the wealth of argument and evidence that we have brought to bear on that question in this case. I take the point, Mr. McCloud, but you know, it is a very direct statement. By allowing for a change or postponement to a new time or place, Paragraph 2 presumes that the government has already served an NTA that specified a time and place as required by A1. And I don't think we were looking to reach out and decide a lot of questions that weren't before us. I think, and this was a, you know, eight justices joined this opinion, it just seemed this sort of obvious understanding of the statutory scheme. So you know, even if it's dicta, it reflected what eight people thought was pretty obvious when you looked at the statute. So Justice Kagan, if I can take that in two pieces. So there are two sentences there. The first one you referred to talks about a presumption in the statute that the notice of hearing will follow the notice to appear. And I agree. I don't think that there is any dispute that there is such a presumption in the statute. But identifying that presumption does not answer the question in this case, which is what happens when the presumption is not met and the notice to appear did not contain the time and place information. Then the second statement, which I acknowledge is a difficult statement for me, is the statement about the meaning of change. And I do think that's dicta. I also think it's incorrect dicta. And it's not surprising the court got that incorrect because it just did not have the evidence, like the dictionary definitions, like the contextual evidence about the meaning of change that we have brought to the court's attention in our briefing. Mr. McCloud, that seems to beg the question. The finding in that case, and since I wrote it, was that the statutory presumption commanded by Congress, who knew full well that the government was giving notices with TBAs, time and place to be announced regularly, was contrary to that history. They wanted these notices to be full and complete. That's what we held. And having held that, I think there's a presumption that you have to look at the statute in that they will always start with a proper notice to appear, and if you're going to change the time and place, you're going to give a new time and place. I don't understand that a new time and place is something different than what you've already specified. And Justice Sotomayor, in this case, we think that we did satisfy that burden because we did provide a new time and place. We told the noncitizens where their removal hearings would be held, and so they had the information they needed to attend. And so I don't think that change is actually the operative word in the statutory scheme, but I don't want to fight you too hard on that, because I do think that even if you think that notice of hearing must change a previously set time or place for the hearing, that requirement is satisfied here. Because the ordinary meaning of the word change is very broad, and it encompasses the process of going from So change is no change, meaning you haven't set a time and place, and we're going to change that and set, what, another no time and place? Your Honor, what we have done... Because I know it's going to be a time and place now. Your Honor, what we have done in the TBMTAs is to tell the noncitizen, you're going to have a hearing. We don't know when that hearing will be, but we have changed from that placeholder time to a specific time. And we think that under the ordinary meaning of change, particularly as it's used in this statutory scheme, going from an indeterminate time and place to a determined one is a kind of change. I'm sorry. Didn't you lose that argument in Nieschavez? I mean, I understand and take your point, but I thought the Court said you really couldn't interpret the statute in that way or the word change in that way. Respectfully, Justice Jackson, I don't agree. I think the only issue that the Court decided in Nieschavez was whether we could compile two documents together to create a notice to appear, and the Court said that that definite Article A indicated that the notice to appear needed to be a single document. And so we are not disputing for purposes of these cases that the notices to appear alone could not be the basis for in absentia removal. But what's critical about this case and what distinguishes this case from Pereira and Nieschavez is that Congress here created two forms of notice and it made both of them relevant for purpose of in absentia removal in a way that they are not relevant for purposes of other cases. Can you say more about that, two forms of notice? What do you mean? I mean that they created both the Paragraph 1 notice, the notice to appear, and the Paragraph 2 notice, the notice of hearing or as the other side refers to it, the notice of change. So you think those operate completely independently of one another? They're independent in the sense that they can both be independent valid basis for in absentia removal. I take the point that the notice to appear is what initiates the proceeding and so some sense you need to have a proceeding in order for there to be a notice of hearing to alter that proceeding. But I don't think it is the case that the TBD status of the notice to appear in any way invalidates the later notice of hearing. And that's because that statute is very clear about the requirements for a valid notice of hearing. It needs to set the new time and place and we did that in this case. Mr. McLeod, what would happen if the non-citizen showed up to the right time and place in response to the notice of hearing, but the NTA had been incomplete? Would that be grounds for the non-citizen objecting that the entire proceeding was invalid because after all, the statute does say this following information shall be provided. So if the date and time was omitted from the initial one, would that be grounds for an invalidation of the proceeding? No, Justice Barrett. All of the courts of appeals that have considered that issue and the board, when it has considered that issue, has said that the requirements, both the statutory requirements and the regulatory requirements regarding the notice to appear and the information it has to contain are claims processing rules. They are not jurisdictional rules. So they do not divest the immigration court of jurisdiction if there is information missing from the notice to appear. So is your position, let me try to state how I, I don't think you say it quite this way in your brief, but this is what I take from your brief and I want to see if I'm understanding it correctly. A notice of hearing presupposes that there has been a notice to appear because otherwise, well, both because of the word change and otherwise there would be no way for the alien to receive it because you have to know what address to send it at or have personally served it, correct? That's correct. Okay. So is it your position that once the notice of hearing arrives, telling the non-citizen where and when to show up, even if there's some information lacking, and let's say it's information that's even maybe more significant than the date and time that the government has been omitting, and it's maybe an incomplete statement of the grounds for removal, that the alien by virtue of the in absentia provision has an obligation to show up because he's on notice. It's not like he's not aware that he is in contact with, you know, immigration and that there are removal proceedings underway, but he has an obligation created by the notice of hearing to show up and at that point to register any objections he may have to the incomplete NTA. That is our position, Justice Barrett. I want to make sure that I'm clear, though, that we think there are a number of safeguards that would prevent the result that you're talking about or the blank document hypothetical that the other side has raised. And if I could go into those protections. The first is the regulatory requirement that the notice to appear contain the charging information. So if we had a blank document or a document that was missing the charges against the non-citizen... You need... Sorry, don't you need the protection from the statute itself? Because the regulatory requirement can be subject to change, so I think your better argument comes from the clear and convincing evidence requirement in the statute itself. That was my second response, Your Honor, which is we bear the burden by clear and convincing evidence to prove that the non-citizen both received notice and that they are removable as charged, and so if you have a document that lacks charges, we could not prove that the non-citizen actually is removable. And then the third... I'm sorry. Well, the third protection I was going to refer to is the fact that in absentia removal is not automatic. There is an immigration judge who is sitting on the other side of the bench and who has to review the documents and decide whether in absentia removal is appropriate, and so I think it is highly unlikely that an immigration judge in the circumstances with the blank document or the document without charges would enter in absentia removal. Suppose the A-1 notice didn't have the right to counsel in it? So the answer, I think, is the same as before. We view the right to counsel information obviously as an important piece of information, but the lack of that information does not affect the validity of the proceeding. So if the non-citizen... Right. So it does suggest, I mean, you're not informed of your right to counsel. Nonetheless, you have to show up, and I don't see that any of your safeguards actually protect the alien, the non-citizen, in that situation. I mean, what's going to prevent the non-citizen from being ordered removed, not being able to reopen, notwithstanding that he's never been told that he has a right to a lawyer? What prevents that result, Your Honor, is the regulations I was referring to. If the notice to appear does not contain the information about the right to counsel, that is an incomplete notice to appear that would be rejected by the immigration court. I also want to emphasize that... Let me pause there. Your regulations are interesting because they suggest that a lot of things are required in a notice to appear except stuff that the government finds inconvenient, like the hearing date, and try to resuscitate the pre-statutory regime that existed before where the government could issue as many notices as it wanted. So the regulations themselves may or may not comply with the statute, and as Justice Barrett pointed out, they may or may not change. The only statutory hook I think you've identified to save the problem is the clear and convincing evidence requirement. But that's just a clear and convincing evidence requirement. The notice was given, and here the notice would be the Section 2 notice, the notice of change. So none of that means that the NTA, the Section 1 notice, has to be complete, or in fact anything other than a blank document, right? So Justice Gorsuch, I think if we were in the world where we have repealed all our regulations and we have somehow convinced the immigration judge to... Forget about your regulations. The law, your interpretation of the law has to hang together and make sense of the law. Otherwise, it is a trust us argument. Trust us. We will have our own internal operating procedures. I'm asking you about statutory interpretation, and we normally ask, we think statutes are coherent, sensible, not ridiculous. You invoke common sense in your opening argument. And here, one consequence of your argument, I think, is that the NTA can be a blank document and that you can remove someone in absentia based on a notice of change that says show up on a date certain. The immigrant may or may not know that this is really the government. It's just a date to show up in some place, doesn't have notice of charges or lawyers against him, and the government wins. So Justice Gorsuch, I have several responses to that question. The first is, this is not a case where we are simply asking you to trust us. This is a statute that has been on the books for nearly 30 years and has been used hundreds of thousands of times. Am I correct that the clear and convincing evidence rule that you're relying on as a matter of statutory interpretation would allow the government to remove somebody for a blank document NTA if they fail to appear on a notice of change the government can prove by clear and convincing evidence that it issued a compliant notice of change? Our position is that if a non-citizen receives paragraph 2 notice, a notice of hearing saying show up at immigration proceedings at this date and this time, then yes, the non-citizen needs to comply with that. And if the non-citizen doesn't attend, that's very far away from the statute of these cases. If that happens, if that's the consequence of your statutory interpretation, we have to ask whether that fits with common sense, you say. Okay. One common sense consequence might be this, that if the government can issue blank notices to appear, which it has found rather inconvenient in the past to comply with that provision, need only file notice of changes and then remove people who fail to show up, why wouldn't it proceed in exactly that fashion going forward as a consequence of a decision in the government's favor in this case when, as I understand it, and my figures may not be exact, about a third of cases in immigration proceedings are in absentia removals, so failures to appear. So why not issue a blank NTA because they're hard, they're pain, we found them difficult, then issue a compliant notice of change, show up on a date certain, and then remove about a third of the aliens in this country without any notice of the charges against them or their right to counsel or anything else, and then deal with the remainders and file compliant notices to appear in those cases. So Justice Gorsuch, we do not do that and have never done that for several reasons. Let's put aside the trust us arguments. What would prevent the government from following where the incentives of that decision might lead as a matter of law? And Justice Gorsuch, what I'm disputing is that we would have any incentive ever to do that, because if we did that, if we used a blank document, there would not be a removal proceeding under our own regulations in which to order the non-citizen removed. Mr. McLeod, I have a problem which is I think I don't have to go as far as Justice Gorsuch. You could continue what you're doing. We have two prior decisions telling the government a notice to appear is inadequate that doesn't have the time and place. Despite that, and despite the fact that there's ample proof that it can be done, it hasn't been done. It continues to issue these TBA notices to appear. If we rule in your favor, we're giving you an incentive to continue that practice, because you can do it continuously. You don't have to pay any attention to the statute. You can continue doing TBAs and continue your practice. As Justice Gorsuch said, those people who show up, you give them a compliant one when they show up. Those people who don't, you remove them in absentia, and they can't ever come back and complain about your process. That's really the incentive here. So, Justice Sotomayor, I have two responses to that. First, I want to talk a little bit about our current practices. We have made very significant progress in the years since Pereira and E. Chavez in reducing the number of TBD NTAs that are still issued. There are technological and operational reasons why we're not down to zero yet, and I'm happy to talk about those if Your Honor is interested. But I do want to assure the Court that we take very seriously the obligation to comply with this Court's decisions and to comply with the statute. The bigger problem is, assuming we could issue NTAs that had time and date information going forward, it does not do anything about the hundreds of thousands of cases that have already been closed, where removal orders were already issued. So, let's go to the practical problems. You started by saying there's an entitlement to reopen. There isn't. It is the right to make a motion to reopen, but it's still discretionary for the BIA to decide whether to reopen. Is that correct? So, that is the way that we read the statute. That's not the way that some courts, in particular the Ninth Circuit, have read the statute. They have suggested that if a non-citizen files a motion, and they can prove that they got the defection today. Well, that's a separate legal issue. The way the statute is written, it is not mandatory to reopen if they can take into account what happened in one of these three cases where a litigant showed up. And I don't know, did you forfeit that argument in, was that the last case that's before us, the Mendez-Colin case? In the Mendez-Colin argument? Yes. He showed up a number of times and then left, correct? That is correct. And we did not make a specific waiver or forfeiture argument, if that's what Your Honor is referring to. We've highlighted the facts of his case for two reasons. The first is because it shows – But you could have made that argument. I suppose we could have, Your Honor. But it wouldn't, I think, address some of the problems with the other side's position. In particular – Well, if you had raised that argument, do you have any doubt the BIA would have said you forfeited because you had notice of these proceedings and your rights and the time and place? So there are two problems with relying on waiver or forfeiture in this context. The first is it still allows these motions to be filed. And if even some significant fraction of the hundreds of thousands of old in absentia orders are injected back into the immigration system, that could have a very significant impact on a system that is already dealing with a backlog of three million cases. The second problem is that waiver or forfeiture actually heightens the perverse incentives that the non-citizens' rule creates. Mendez-Coleen would have been better off just never showing up. And so their rule creates a circumstance where non-citizens are encouraged to flout the rules of the removal process by failing to – But if you comply with the statute, they won't be in that position. This is about past people who have already chosen to abscond after they know about hearings. They can't un-ring the bell. And that's our significant concern, Your Honor. There are a huge number of these past people who have gotten in absentia orders after failing to appear, and we don't have any way to remedy that going forward. And if the Ninth Circuit's rules can't – I appreciate the force of the point, Mr. McCloud, but there are so many people because the government was out of compliance with the statute for so long. And so at a certain point, it's just – you can't sort of ask us to read the statute against what the statute says because we've created a world in which kind of we've long since forgotten what the statute says. So respectfully, Justice Kagan, that's not what we're asking. We're asking you to apply the statute as it's written, and that is a statute that permits in absentia removal when a non-citizen received notice under either paragraph one or paragraph two. And all the non-citizens here got the paragraph two notice. They haven't contested that they received notice of when and where to show up. That's what most fundamentally I find a little bit disconforting about your argument, this idea that there are two forms of notice – take your pick, if one is good, who cares about the other. I mean, it seems to me that if you read the statute fairly, it's quite clearly – and this is what we said in our two prior cases – you know, A-1 is the notice. That's the notice. And what A-2 – it tells you what you have to put in it, all the things that you have to do. Here are the charges. Here's your right to counsel, and here's what you're supposed to show up. And what A-2 was about is Congress understood that there were going to be times when you were told to show up on March 15th, and then it turned out that March 15th was impracticable or impossible for any of a number of reasons. And it was a mechanism to say, okay, we don't mean March 15th. Instead, show up on August 15th. But that's what the function of A-2 is. It's not some completely distinct form of notice that you can say, hey, look, we did that one. I just disagree, Your Honor. I think that the A-2 notice serves a distinct purpose, and that purpose is to provide the noncitizen with the information they need to know in order to decide whether they want to attend the removal hearing or not. Doesn't it also – doesn't it also serve the purpose of giving the government the right to remove them in abstention? I mean, the thing that's a little concerning to me about the way the government has constructed its argument here is the suggestion that we ignore 1229A-5A, which requires the government to give the person notice as a prerequisite for the government's ability to take advantage  So I guess I'm a little concerned that what you're suggesting is that we should presume that the removal is proper, the removal order is proper, even if the notice was defective. And now it's on the noncitizen to say something, or it shifts to his burden to prove, you know, that he should not be removed under those circumstances. A couple of responses, Your Honor. First, we are not asking you to read out of the statute the paragraph 2 notice or to ignore the paragraph 1 notice. We're saying both of those notices are relevant for purposes of in absentia removal, and we bear the burden as the government of proving that the noncitizen got notice. But that notice can be in the form of the paragraph 1 notice or the paragraph 2. But how do you square that with the prior cases? I don't understand your distinction. Maybe I would understand it if we hadn't already looked at the same circumstance to determine whether a notice is defective and what is the consequence of that. So in Pereira, we said if it doesn't have the time or place, the notice to appear, then it's defective. And as I read in these Chavez, we say the government can't cure that deficiency for the purpose of the stop time rule by providing a paragraph 2 notice. So the government, I think, has to say there's something different about this scenario, the removal scenario in absentia, than the stop time rule scenario. And there are two significant differences. One is textual, and one is based on legislative history and drafting. So the textual difference is that for purposes of the stop time rule, the only notice that is relevant is the notice to appear. That is the only notice that is referred to in that provision. Why do you say that? I'm sorry. Because when you look at the text of the stop time rule, it says it is triggered based on the service of a notice to appear. There is no reference to the notice of hearing. But it says a notice to appear under section 1229A of this title, and the notice of hearing is under section 1229A of this title as well. Well, Your Honor, that's the argument we made in Pereira that the court rejected. The court said that for purposes of that provision, only the notice to appear is relevant. So even though it refers generally to 1229, the notice to appear is the only notice that's being referred to there. And that is very different textually from the in absentia removal provision, which refers to notice under either paragraph one or paragraph two. What's the legislative history reason? The legislative history reason is that Congress clearly, when it was adopting these provisions, the in absentia removal provisions, wanted to cut down on procedural gamesmanship and the abuse of loopholes by non-citizens that could be used to avoid removal. So it makes sense that Congress would want to be expansive in in absentia removal in a way it wouldn't necessarily want it to do for purposes of stop time. Thank you, Counsel Justice Alito. What do you think would happen if the government proceeded along the lines that Justice Gorsuch has outlined? I think we would create a mess for ourselves because we would not have any proceedings in which to remove non-citizens. Would that be subject to challenge under any provision of federal law? Yes, it would be subject to challenge under our own regulations. I assume that non-citizens would challenge it under the statute as well. And I think the fact that this has never happened in more than 500,000 in absentia removals is proof that we have no incentive whatsoever to do that. Would LENs have an incentive to challenge that as a due process violation? They could. We haven't taken a position on the due process issue, but I think that's a viable argument that they could at least raise. Thank you. Justice Sotomayor? Justice Kagan? I mean, the reason I asked earlier about suppose not a blank piece of paper, but suppose you just stopped telling people about their right to counsel, how that would be cured, what would prevent it? Because that kind of thing seems both more likely to me and more difficult to remedy through any of the supposed safeguards that you've talked about. So, Justice Kagan, if I can maybe address the question about whether that's more likely. I think it's important to recognize that the notice to appear is a form document. It's not as though... It is now, but it doesn't have to be. And maybe somebody will say, why are we telling people that they have this right? So Justice Kagan, if non-citizens don't have the right to have counsel during these proceedings, they have the right to be informed that they could obtain counsel if a non-citizen is... Yeah, right. But, you know, that's a useful thing for a non-citizen to know. And I'm not disputing that, and that's why we put that in the notice to appear. And so tomorrow you decide not to? If we were to decide not to put that information into the notice to appear, I would still say that that notice to appear can validly be used to start the removal proceeding. But the non-citizen, if they come to the hearing, as they should, can say, I was never informed of the right to counsel, and therefore I shouldn't have been... You know, I shouldn't get that opportunity. Not that we have to start all over again? What law would the non-citizen at that point invoke under your theory of the statute? So the regulations and the statute have been interpreted as a claim processing rule. If we don't comply with all of the requirements of the claim processing rule, there are questions about exactly what the remedy is. Some courts have said the remedy is a new proceeding. Some courts have said that the remedy is that the government gives an opportunity to cure. So in your scenario, I think the remedy would be that we give the non-citizen time to obtain counsel and we inform them of their right. Thank you. Justice Gorsuch? I understand in the first place your response to Justice Thomas and Justice Sotomayor about the most troublesome language for you about change meaning something other than what the government is currently suggesting. As I understand it, we would have to say, first, that's dicta, and second, it's incorrect. Is that right? Yes. And that's exactly the analysis the court undertook in the Kirtland case, where it confronted a very similar statement. Got it. I understand my hypotheticals about a blank sheet are hypotheticals, but it's not hypothetical that the government has long issued NTAs that are noncompliant and that it concedes it did so in the cases presently before us, right? That's correct. And then I wanted to ask you about the provision in the in absentia removal statute that says that you can remove somebody, an alien, if he has failed to supply his address. Doesn't that fairly suggest that the alien has first received a compliant notice to appear telling him, as the statute requires, that he must supply his address? Yes, Your Honor, and that's what the board held in the in raid GYR decision that's cited on our reply brief. It said, if you never received a notice that informed you of that requirement, you can't be ordered in absentia. I understand that's your response, that, oh, don't worry, okay? But I think the logic of your argument is if he fails to appear for a notice of change hearing and the notice of change statement, the notice, was it self-compliant, forget about the NTA, you're good to go in absentia removal. That's how you're asking us to read the statute presently. Now you're adding a qualifier and saying, well, not with respect to addresses, if the NTA is looking for his address, but where in the statute does that come from? When I look at the in absentia removal provision, as you read it, if I'm to take your logic seriously, that's irrelevant. Now it's nice that you have a board decision or a regulation, but I'm, again, asking as a matter of statutory interpretation how that argument hangs together. And the answer as a matter of statutory interpretation is that if you look at 1229BB, it refers to 1229BB, little B, big B. Little B, big B, okay. It says that no written notice shall be required under subparagraph A if the alien has failed to provide the address required under section 1229A1F. Which just repeats what 1229A says and what AB5B and what 1229A2B say. There it is again, but it doesn't say anything about limitations on in absentia removal. It just simply says the notice to appear should contain this information. It should provide it. Well, what the board has said is that... Forget about what the board has said. As a matter of statutory interpretation, you pointed me to one provision that doesn't work. What else you got? Well, if I could finish my answer about why that provision does work, it's the words required under section 1229A1F. Which refers us all the way back up. I got that. Which refers us back up to A, A1, and so if you never received information in A1 that said you have this obligation, you don't have an obligation to update the information. Fair enough, but where does it follow that an absentia removal for a failure to appear for a notice of change hearing depends upon any of that? I don't see that in the statute. I think that follows from the text of B5A and B5B. That's what you've got. That's what I've got. All right. Thank you. Justice Kavanaugh? I think you were interrupted when you were saying correcting the NTAs going forward doesn't do anything about the hundreds of thousands who previously received NTAs without the time and date. So can you just finish your answer on that, on what will happen to those hundreds of thousands of cases? Certainly, Justice Kavanaugh. So as the Ninth Circuit has interpreted this provision, all of those hundreds of thousands of individuals have a right to seek rescission, and as I was discussing with some members of the court earlier, at least in the Ninth Circuit and some other courts, that right is essentially automatic. And so we are very concerned that those hundreds of thousands of cases could be injected back into the immigration system. And we have already seen some evidence of that in the wake of the Ninth Circuit's panel decision in Singh. So in 2021, the year prior to the Singh panel decision, there were 380 motions to rescind in absentia orders filed nationwide. In 2022, the year of the Singh decision, that had risen to over 6,000. And in 2023, that had risen to over 11,000. So I think if this court sides with the Ninth Circuit, that already substantial increase we have seen is going to turn into an avalanche. And then how do we think about the context of the stop time rule versus the context of in absentia removal in thinking about the particular statutory provisions here? Or is that different context not relevant? No, I think it is relevant in this respect, Your Honor. So one of the concerns that the petitioner in Pereira brought, and that I think the court latched onto in Pereira, was that the stop time rule gives the government a procedural advantage. And there was a sense that it was unfair to allow the government that procedural advantage if it had never committed to moving forward with removal proceedings. What's the procedural advantage? Just spell that out. The procedural advantage is that the noncitizen does not accrue years toward cancellation of removal. And so it makes it easier for the government to remove someone if we can trigger the stop time rule. So there was a sense of unfairness, I think, or at least an allegation of unfairness there. That's very different from this context. In the in absentia removal context, the unfairness, I think, would come from giving noncitizens who knew they were in removal proceedings, and who knew they had an obligation to go to their hearings, and who knew when and where the hearings were, the chance to claim a lack of notice when they clearly had notice. And that disadvantages other noncitizens who did follow the rules, who complied and went to their removal proceedings, because those noncitizens could be removed at the end of their proceedings. But someone like Ms. Haleen, who just decides, I don't want to show up, has this in absentia order, but it could always be rescinded under the Ninth Circuit. So you're better off not showing up. You are. You're absolutely better off not showing up.  Justice Barrett? Mr. McLeod, could you tell me what the distinction is between the notice to appear and the charging document that the government begins to file the removal proceedings? For purposes of removal proceedings, there is no distinction. Charging document in the regulations is defined to include other documents that can start other kinds of immigration proceedings. And it's defined exclusively in the regulations? It's defined in the regulations. That's right. So in that clear and convincing portion of the in absentia removal proceeding part of the statute, it says you have to show by clear and convincing evidence that the written notice was provided and by clear and convincing evidence that the noncitizen is removable. Correct. Okay. So a big concern, and I think the worst part for you, is this blank document hypothetical or hypothetical that omits crucial information like the right to counsel or the grounds for removal. What would the IJ do? And I'm going to tow the Justice Gorsuch line here. Don't refer me to the regulations. As a matter of the statutory language, for purposes of determining whether the noncitizen by clear and convincing evidence is removable, is it possible if only the notice of hearing has been provided for the IJ to make that determination? I mean, I guess according to the statute, the government could simply say and launch into a whole new explanation that wasn't included in any NTA about why the alien or the noncitizen is removable. So I think the answer is it is not possible because removability requires an assessment of the charges against the noncitizen. So if all the IJ had was the notice of hearing that says this is the time for the proceeding and the consequences for not attending. But the charging document, you told me, isn't defined in the statute, so it could say something different than the NTA. So if we are in a world where the government has supplemented the charges against the noncitizen, I guess, orally, or they've appended them to the notice of hearing, I suppose the immigration judge could look at that document and decide that it... We're imagining the world of the worst case hypothetical, where it's a blank document for the NTA, and then the notice of hearing that tells the noncitizen where and when to The noncitizen can be ordered removable when he was never informed what the charges against him were, the grounds of removability. And I guess where I'm struggling in the hypothetical is with the idea that the immigration judge would even be able to say that the noncitizen is removable if there are no charges. Well, that's my question, too. So that's why I asked you what the distinction between the NTA and whatever document is necessary to initiate the removal proceeding is, because it seems to me that if they are distinct documents and they are different, the nightmare scenario can unfold with the safeguard of the regulations. Maybe I was unclear in my answer to your first question. For purposes of removal, the charging document is the notice to appear. That's why the notice to appear has to contain the charges in order for it to be a notice to appear that starts a removal proceeding. So in the blank document hypothetical, where there's no charges whatsoever, there was no immigration judge to assess removability because they can't see the charges against him. So when you told Justice Gorsuch, he said all you need to show by clear and convincing evidence is that the notice was served and you agreed with him. Are you amending that answer? I may have misunderstood his question. I thought the question that I was asked by Justice Gorsuch was, assume away all of those protections in the regulation and assume away the fact that the notice has to contain the charges, what result then? I think the answer then is the notice of hearing alone would be sufficient, but that's just a million miles away from the reality of this statutory standard. Okay, so your answer is that the non-citizen cannot be found removable unless the government shows by clear and convincing evidence that the notice was provided and that he is removable. And you're saying that there's no way to show that he's not removable if the NTA has not been served, so at least that much information would have to be there? If there's no document that contains charges against the non-citizen, there's no way to show that they're removable. Okay, so it doesn't eliminate Justice Kagan's hypothetical of right to counsel not being included, but it would eliminate the hypothetical of the entirely blank document. I think that's fair. Okay, thank you. Justice Jackson? Can we go back to the distinction, if any, between the stop time rule and an absential removal? I understood you to respond to Justice Kavanaugh by saying that the government's position is that the stop time rule gives the government a procedural advantage, the ability to thwart the accrual of time, and so that's why the government has to dot all the I's and cross all the T's with respect to that. But I guess I see this as exactly this, meaning in absentia removal, as exactly the same thing, because ordinarily a non-citizen would be entitled to a hearing where he or she could make an argument and advocate for themselves about removal, and the statute allows the government to get around that in a sense by allowing the government to get a removal order in the absence of adversarial presentation by the person who doesn't show up. And so I guess what I'm still struggling with is why we would have a world in which a statute that requires the government to give notice in order to be able to get a removal in absentia order would allow for that notice to be deficient in any way. Justice Barrett talked about the different ways in which it might be deficient, but why could the government give deficient notice in order to get the benefit of in absentia removal when we've already held that the government can't give deficient notice to get the benefit of the stop time rule? I have a couple of responses to that, Justice Jackson. The first is we agree that non-citizens get the opportunity to present their case in the way that Your Honor suggested, and they get that opportunity by showing up at the hearing. So the facts of these cases are we told the non-citizens when and where to show up to present their case, and they failed to do that. Yeah, but the statute doesn't say if the non-citizen doesn't show up, the government gets the removal order. The statute says if the non-citizen doesn't show up and the government proves that through clear and convincing evidence they got notice and the person is removable, then the government gets the order. So I don't think the government can rely on the fact that the person didn't show up as the basis for the validity of their removal order. And my question remains, if the government doesn't actually prove that they gave the notice that the statute requires, why should the government be entitled to getting the removal order in this case when the government would not have been able to get the stop time order under our prior precedent? And I think my answer is similar to the one that I gave you before, which is for purposes of in absentia removal, there are two notices that are relevant and can be a basis for in absentia removal. No, you're just saying that the notice isn't deficient. Let's assume that the notice is deficient. My question is, if the notice is deficient, you're suggesting that there's something about removal that would make it okay for the government to still get the order in that situation. When we've said if the notice is deficient in the stop time rule scenario, the government can't stop the time. And I see that parallel and I'm worried about whether or not you're really asking us to take Pereira or Ms. Chavez in the analysis if we hold for you in this case in the way that you are setting forward. No, Your Honor, we're asking you to take Pereira seriously when it said that it was a narrow decision about the intersection between the stop time rule and the notice to appear requirements. We are not saying that if a non-citizen gets absolutely no notice whatsoever, they can be ordered removed in absentia. In these cases, it is true that the notice to appear lacked certain information, but that missing information was supplied by the notices of hearing that the non-citizen received. But you don't dispute that that missing information in this case is the same missing information that was in Pereira and Ms. Chavez, right? We're not talking about two different kinds of missing information that might allow you to make this distinction. I don't dispute that the information is the same. I dispute that the relevance is the same. Because in Pereira and in Ms. Chavez, for purposes of the stop time rule, there was a concern that if we never told the non-citizen when and where to show up for the proceedings, they weren't going to be able to figure out what to do. Here, the information was provided to the non-citizen. All right, let me ask you just two more really quick things. One is, is in absentia removal the only way the government can remove a non-citizen? I didn't understand your response to Justice Alito about that. You can remove a non-citizen without in absentia removal, right? Correct. If a non-citizen goes to their removal proceeding, they can be found removable. So I didn't mean to suggest that... Or if you find them and you arrest them and you bring them for removal, they can be removed, right? That's the way that an ordinary removal proceeding works. And that's the way that these removal proceedings were initiated as well.  And finally, with respect to the catastrophic nature of a ruling in the favor of the other side, you said that the Ninth Circuit finds that there's automatic reopening and whatnot. So couldn't we agree with the Ninth Circuit's holding related to the deficiency of the notice here, but maybe disagree that there's automatic reopening for all the people who have previously had this problem? So I guess what I would say is the question of what is the remedy and whether it's automatic or not is not before you. I don't think it's fairly included as part of the question. But true, true. But what I'm just saying is it's not necessarily the case that we would have this catastrophic result because we could have a separate remedy question that we could disagree with the Ninth Circuit. That is true. You could have a later remedy case. But I would still caution that even if it's not automatic, a significant number of these motions are likely to be granted because the noncitizens are saying we did not get notice. And so if they are granted and if they are injected back into the immigration system, that is going to have significant impacts on that system. Thank you. Thank you, counsel. Ms. Anand. Thank you. Thank you, Mr. Chief Justice, and may it please the court. This is the third time the government has come before this court and asked to be relieved of the consequences of flouting the plain text of the INA. For a third time, the government says the notice it gave is good enough. Just as it did in Pereira and Ms. Chavez, this court should reject the government's argument here. Indeed, the government's position in these cases is more extreme than its position in Ms. Chavez. In Ms. Chavez, the government said so long as the government, as long as the noncitizen gets all of the information listed in Paragraph 1, it doesn't matter what format it comes in. In these cases, the government seems to be arguing that if you have a Paragraph 2 notice, it does not matter if the noncitizen never gets any of the information in Paragraph 1. And just to slightly amend the kind of nightmare hypothetical we're talking about, it's where the government sends the noncitizen a blank piece of paper, but nonetheless gives the immigration judge information about, for instance, the charges against the noncitizen. In that circumstance, the government can prove by clear and convincing evidence, removability, the noncitizen has no clue what the charges against him are. And whereas in Ms. Chavez, the argument was that a deficient NTA was nonetheless sufficient to stop the clock for discretionary relief, here the government is arguing that same deficient NTA is somehow sufficient for the far more draconian sanction of removing a noncitizen without ever hearing their side of the story. Because the statute doesn't contemplate that result, because it requires a complete, valid Paragraph 1 notice in every case and contemplates a Paragraph 2 notice only as a supplement to that valid Paragraph 1 notice, this court should reject the government's arguments again. I welcome this court's questions. What's your best textual argument for your last point? So, Your Honor, we think that there's two buckets of textual evidence. The first is about the sort of centrality of the NTA, so it's the fact that it shall be issued in every removal proceeding, the fact that it contains a bunch of information that's not in Paragraph 2, and the fact that the statute says that a hearing can't be held less than 10 days from the NTA, so there's a presumption of the NTA. The second bucket is the language of 1229 Paragraph 2, which says that a notice of change must be given only in the case of a change in the time and place of the proceeding. And we believe that the combination of those two, the centrality of the NTA, the change language that this court has already interpreted in Pereira, adds up to our position. I think it says any change, and that any change language seems to be broad enough for the change here. So, Your Honor, again, that any change language is the same language that was interpreted in Pereira, and I don't think it's broad enough to encompass what happened here. If I could take the example from the government's reply brief of the voter registration form and the change of party affiliation form. If you mess up your voter registration form, if it's invalid, in the same way here the NTAs were invalid, it doesn't matter how many change of party affiliation forms you file until you fix that voter registration form. Filing a change form won't do any good. The same thing is true here. Because the NTA initially was invalid, because it had the TBD language, it doesn't matter how many times you say, I'm trying to change that, until you've got the valid NTA, there's no change to be had. Could I just have a clarification of your position, Ms. Anand? Suppose that you have, a non-citizen has a paragraph one notice, and there's nothing wrong with the date and time. So, the government fills out the date and time correctly, but it does something else wrong. It doesn't tell the non-citizen about the charges, or it doesn't tell the non-citizen about the right to counsel, or so forth. And then, there is a paragraph two notice, because there needs to be a change in the date and time. Now, at that point, what happens? Can the non-citizen reopen? So, no, Your Honor, and that's sort of for the reason I just articulated. So, we think that in this case, the change language is wrong for two reasons. One is, we think TBD, to date and time, is not actually a change. But the other reason is… Right, so I've just taken that out, right? And I'm saying, so now you can't rely anymore on the textual hook of what the word change means? Do you still have an argument? Yes, Your Honor, because it's not just a change, it's a change to the time and place of the proceeding. And if there's never been a time and place of the proceeding set, because the NTA is invalid, right, it's not doing its function of initiating a proceeding, then there can't be a change to the time. No, no, maybe I'm not making myself clear. I was assuming that there's no problem in the first notice with the time and date. So, you know, you don't get the textual hook of saying, oh, that's not a change, because it hasn't gone from to be determined to March 15th. It's gone from February 15th to March 15th. But there's some other problem. There's some other problem about the charges or about the right to counsel. It seems to me that you've now lost your textual hook for the noncitizen to be able to say that they have a right to reopen. Am I wrong about that? I think you're wrong, and that's again because of… I'll go back to the voter registration hypothetical. So if the initial document is invalid, right, you never actually registered to vote, you can't just fill out a change of party affiliation form, even if you had a party listed in the registration form. And the same thing is true here. The NTA is invalid if it's missing some of the information in paragraph one, and so it's not actually doing any work. Now, I think it's overdetermined in this case. I just want to make, before we leave this, I just want to make sure I understand it, too. I'm sorry to interrupt, but you would just say there's simply no NTA, and so it isn't something that's remedied by section two, which has to do with time and place information. You just need to file a compliant NTA and then off you go. That's exactly right. Now, again, in this case, it's overdetermined because we also have the change of language and because sort of the square holding of… Just wanted to make sure I understood. Thank you. Thank you. Did you dispute the proposition that just as a matter of ordinary language, there can be a change from an indeterminate time or place to a determinate time or place? So, yes, Your Honor, we think that ordinary speakers of English don't use change to refer to indeterminate time. To determinate time, so we give the example of a bride who announces she's going to get married. We don't know the date yet. When she sends out her cards telling you the date, we call that a save the date, not a change the date, for instance. Well, I mean, if the bride says, I'm going to get married, and a friend says, oh, when is that going to happen? And the bride says, well, we don't know yet. Then the other person says, well, let me know if there's any change. You think that's an unusual use of language? So I do, Your Honor, and I think that's particularly so in this case because of the kind of validity point I've been making. That is to say, when the initial document is No, no, I'm not talking about the intricacies of the statute. I'm just talking about ordinary language. I could give you many examples of exactly the same thing. It doesn't seem to me. You have an interpretation of change, but do you really want to say that this is outside of the realm of reasonable realm of possibility that people can talk about a change in that way? So I don't know if it's outside of the reasonable realm, but when combined with the Not quite holding, but clearly sort of central to the discussion is this interpretation of the exact same language. And when combined with the other structural clues that an NTA is central to the whole administration of the statute, I think our interpretation of change is the better one. How do you respond to the government's suggestion that the NTA is really not central? I mean, the government says we're looking at the statute and it says, you know, we can get an in absentia removal order if we have issued one or two. And so I guess the government's point is that suggests that one is really not pivotal in the way that you are putting forward. So I think that's wrong, Your Honor, for two reasons. The first is that the or in the in absentia context doesn't define the relationship between A1 and A2. That's done in the statute defining those two provisions. And so again, to go back to the voter registration hypothetical, you could have a sentence saying, you know, send the voter the primary ballot for the party listed in their voter registration form or their change of party affiliation form. That wouldn't mean that somehow the voter registration form is irrelevant just because you have the word or in that sentence. And so I think what you have to do is look at paragraphs one and two and the relationship between them. And it's clear both from the mandatory language of paragraph one from the fact that, as this to defend yourself at a removal proceeding and the fact that A2 is structured as a change or a supplement, that those two documents are not interchangeable. Ms. Hannon, I want to make sure I understand your answer to Justice Kagan about change. So you're saying that, you know, just because you file a change of party affiliation form doesn't make your initial voter registration valid. I get that. But in the statute, it says change of time or place of proceedings. So it's not, you know, referring generally. I'm just wondering where you get the statutory hook, because that presumes that there is an NTA. But if it's defective in some way, if, as Justice Kagan said, we take the defect in time and place out of it, why couldn't it be that there is an NTA that's defective in some way, but the statute imposes an obligation on the noncitizen who knows the time and place he's supposed to show up to make an appearance at that proceeding and raise whatever objection there is to the defect? And maybe the objection, and I'm thinking of an analogy to a Rule 55 civil, you know, default judgment proceeding. It may well be that whatever objection that the noncitizen raises at that point is fatal to the government's case. You know, maybe it's missing some vital piece of information. Maybe it can be remedied if it's omitted the right to counsel by giving him time to If there's some problem in the description of the charges, the grounds for removal, then maybe the entire thing has to be dismissed and the government has to start again. But why wouldn't it be consistent with the statutory scheme for the noncitizen to have to show up to the removal proceeding and register whatever objection the noncitizen has? I'm not saying that that's right, but it seems to me, I just want to understand why that's ruled out on your understanding of the statutory language. Sure, Your Honor. So the statute doesn't ask about notice generally or notice of the time of the hearing. It asks about notice in accordance with these specific statutory provisions. And that's a contrast to the pre-or, right? So that's correct. But our position is that there's been neither a Paragraph 1 notice nor a Paragraph 2. But I guess I don't understand why where in the statute you can say there has not been a Paragraph 1 notice if there's been a defective Paragraph 1 notice. There's been a Paragraph 1 notice. And here I'm not talking about the blank piece of paper. I'm just saying it's missing some piece of information other than date and time. Why isn't that just a defective NTA? So I think that's sort of the square holding of Pereira. So again, Pereira reserved the question of missing other pieces of information, but the statute puts them all on par. Pereira says it's not just that this is a deficient document. It says no notice to appear has been served, right? That's the language that Pereira was interpreting. Except, well, sorry, go ahead. So Pereira's interpreting has a notice to appear been served under Paragraph 1. It says no notice to appear has been served if it's missing one of these pieces of information. And so can I, I'm not cutting you off. Then I'll jump into that. I have, I want to follow up on Justice Barrett's question, because she seems to be seeing a difference between a jurisdictional flaw and a claim processing flaw, which is what Mr. McCloud has been calling this. And I do think that we, you have to address that question. It seems to me that the clear holding of our precedent, prior precedence, is that it's jurisdictional. That if you don't have a proper notice of appeal, of appearance, that that's a jurisdictional defect. They can't order you, they can't invoke the stop-gap rule, but they also can't order you removed until they provide you with the proper document, correct? So I think that's right. I want to be a little bit careful, because I think jurisdictional is a little bit of a slippery word. It is, that's the problem. Right. But so is using claim processing in this kind of context. So our position is that if you show up at the hearing, as Justice Barrett articulated, you can say this was defective and until the government cures that defect, they can't go forward. Congress also provided an express remedy for where there's a defective notice and you're removed in absentia. There is no remedy in the statute for where there's a defective notice and a removal order was entered after a hearing. So we're not saying that someone who attended their hearing had the chance to object to the notice to appear and was nonetheless removed gets to reopen, because Congress hasn't provided that remedy. Congress has, however, and... Before, I'm sorry, before we end UN today, I want to take head on the draconian consequences that are ruling in your favor that the government is painting, and I want you to answer that. But I cut off a colleague who had... No, you may as well go with that now. So two responses, Your Honor, right? The first is the government came to you in Pereira and Ms. Chavez and also articulated a parade of horribles. And this court said those sorts of raw consequentialist calculations have no place, particularly where, as Justice Kagan noted, those consequences are a function of the government ignoring the text of the statute over many cases and many years. The second is, you know, I don't want to dispute that there'll be an increase in the volume of these motions, but I do want to be clear about who exactly has an incentive to file them. Remember, if you win on reopening your in absentia removal order, all you get is another hearing, right? Even if you're successful in clearing all the hurdles. And at that hearing, you have to prove that you're able to remain in the US. And so, you know, for many, many non-citizens who have no pathway to staying in the United States, it's very unlikely that they're going to come forward and file one of these motions to reopen, because the best they get is another hearing. Counsel, did I understand you to say that if... I mean, we've heard a lot of talk about deficiencies apart from the notice, and that being one of the problems, but you should get the original notice rather than simply later notice, even if you comply with the later notice. Is it a harmless error situation if there have been no changes in the rest of the NTA? So, Your Honor, I think that the statute doesn't contemplate that, where the statute asks not just for notice or notice of the information listed in paragraph one, but notice in accordance with these provisions. And prior to 1990, remember, the scheme was this sort of case-by-case adjudication. So the statute said notice reasonable under the circumstances. And what Congress did was it said, rather than that kind of case-by-case adjudication, did the non-citizen get enough notice? We're going to put the cards in the government's hand. Well, but let's just say that there has been no change in the notice. I suppose if you want to challenge the notice as a categorical matter across the board of all these proceedings, you could. But I thought you said that if there has been no change, in other words, other than a change in the time and the place, but the rest of the NTA is the same, that that individual would have no claim at that point. So just so I understand the hypothetical, the notice to appear is compliant? Except for, you know, the reason there is a later, a new notice. That's the only situation in which it is, the only aspect in which it's non-compliant. And the person shows up at the time. The person shows up at the time, so they have a non-compliant, they have a TBD NTA, right? Yeah. So I think at that point they can say, you know, they won't get much for it, but they can certainly say, you can't proceed until you give me a compliant NTA. The government has to put out a ban. The NTA was compliant in every respect, except that we had a TBA rather than the actual time and place. You got notice of the time and place. You showed up. What? You show up and you say, my NTA was not compliant. The government has to give you a new one and has to wait 10 days before they can remove you. It was not compliant in that it didn't have a time and place. But then it was, there was a time and place. You're saying he has to show up and say, I didn't get a time and place in the original one, even though I got a time and place in the second one and showed up. I can complain that I didn't get one in the original one. I think that's a square holding of Niz Chavez. Niz Chavez says two different documents that add up to all the notice required in the paragraph one is still not a paragraph one notice. That's the holding of Niz Chavez. And in this case, the government's position is even more extreme because they're telling you it doesn't even matter if the non-citizen never got all of the notice in paragraph one. That's what they're telling us. But I'm addressing a case which I would suppose would be a very common one where there's no objection other than that I didn't get the time and notice in the first place. There's been a lot of talk. Well, they don't tell you the right to counsel. They don't tell you this or that. What if they told you all that in the original one that you got, but it didn't have a time and place. Then they come back and say, well, here's the time and place. You show up and they say, well, what's your objection? And you say that the objection is that I didn't get the time and place originally, even though I got it later. And here I am. So I think that's right. I think that's the sort of square holding of Niz Chavez. It says that those two documents don't add up to a paragraph one notice. I'll hasten to add, though, remember, this isn't just about eligibility to move to reopen. There are other points in the process where the question of whether... But your answer to the Chief Justice makes it clear, I think, but correct me if I'm wrong, that you would be better off not showing up. I don't think so, Your Honor, because remember, if you don't show up, all the government has to do at that point is say, oh, that's right, I didn't have a proper NTA here. I'm printing it out. I'm mailing it to the non-citizen with the time and place. Ten days later, I can remove you in absentia. So either way, all you're buying yourself is the government reprinting this piece of paper and waiting 10 days to remove you. But the removal in absentia can't happen under your theory. Well, the removal in absentia can happen if the government prints out the NTA again, fills in the time and date, and then waits 10 days. They start the proceedings over. But the removal in absentia can't happen if the person shows up, right? I mean, the reason why we're in absentia world is because they don't show up. So I guess I'm confused about the Chief Justice's hypothetical and how it relates to this statute or this circumstance that we're talking about. I thought the sort of premise of where we were was we're in a situation in which the person isn't there and the government gets removal in absentia as a result. That's exactly right. I was just trying to clarify that I don't know how much then is the sort of bizarre incentives point. First of all, of course, the government can just issue a compliant NTA up front. If they haven't and the non-citizen doesn't show up, they can send ICE out to arrest the person. If they choose not to do that, they can print out the compliant NTA then and there, put it in the mail, and then they can get their in absentia. I thought of the proposition that was simply trying to suggest that your argument leads to an absurd result if what it says is that everything's the same, except you didn't get the notice originally. And the fact that you got a later notice, you're saying your argument would still be the same. That's exactly right, Your Honor. I think that's a function of the government flouting the statute, though, right? The statute was not actually designed for a situation in which the government systematically puts TBD instead of the sort of date and time of charges. It was designed for the kind of one-off mistake. You put the wrong person's name on this or sent this to the wrong address. And so, you know, what Congress thought it was doing was coming up with a scheme that put all the cards in the government's hands. It said, we're not going to ask on a case-by-case basis, did the non-citizen have enough notice and allow them to say, I was confused, I got this document and not this document. We're just going to give the government all the power. All you need to do, government, is put these seven pieces of information on one piece of paper. Well, as to what Congress thought it was doing, you filed the brief on behalf of Mr. Singh. Are you able to address the situation of Mr. Mendez-Coleen? So, yes, Your Honor. All right. So, in Mr. Mendez-Coleen's case, his removal proceeding began in 2001. And after that, he showed up at numerous hearings. The dates were changed. And you say Congress would have wanted him, at this late date, to be able to reopen his removal proceedings because he didn't get a compliant NTA back in 2001. Yes, Your Honor. Congress expressly said, at any time. In contrast to numerous other provisions of a lot of... Yeah, so, I think there's a difference between the right to make a motion to reopen than to have it reopened. Are you arguing that if there was a deficient notice in this situation under A-1, that the board has to reopen? Or does it have the discretion to consider a forfeiture or a waiver argument? So, certainly, Your Honor. There's several provisions outside the scope of the question presented in this case that can deal with any sort of deemsmanship. So, as Your Honor noted, there's equitable doctrines. The government can raise waiver, forfeiture, estoppel. There are doctrines... There's statutory provisions about the subsequent hearing. So, for instance, under 1229-AB-7, if the non-citizen had oral notice of the time and place of the hearing, they aren't eligible to apply for various forms of discretionary relief. Counsel, could you answer the question that I... I don't think you really had a chance to answer the question that I asked, which is whether... You talked about what Congress thought it was doing. And my question was, do you think Congress really thought it was doing what you are claiming should be the result in Mendez-Coleen's case? I think that Congress didn't anticipate the government would ignore the text of the statute. The reason that Congress put in the at-any-time hook is because they imagined these would be one-off circumstances where something gets lost in the mail or the government makes a typo and so switches to non-citizen's paperwork. They were not imagining sort of systematically ignoring the statute for many years. So, yes, at this point, the statute probably leads to results Congress didn't intend, but that's a function of the government flouting the plain text of the statute and shouldn't have any bearing on your reading of the remedial provisions. Well, as to the plain text of the statute, we've now had like an hour and 17 minutes of argument and virtually nothing has been said about the plain text of 1229-AB-5A. Pereira and Chavez were literal interpretations of the statute. Now, there's an answer to what I'm going to say, but I'll get to that. But if you read the provision I just mentioned, literally, you lose, right? Any alien who, after written notice required under paragraph one or two, has been provided to the alien, okay? Notice under two was provided, right? We disagree with that. So we don't think notice under two was provided because two is a supplement to a valid one. And so without a valid one, you can't have a paragraph tuner. So our position is that neither notice in accordance with paragraph one... I'm just talking about the literal language of the statute. I'm not talking about what was held in Pereira or Chavez, which concerned a very different question. You keep saying they held this, they held that. What they held had to do with the stopped time rule. Just the literal language of this, that's against you, right? So I disagree because we think there's been no paragraph two notice. So you can't have notice required under paragraph one or two if you've neither gotten paragraph one notice, that's the government's confession in this case, nor paragraph two notice, which is our contention about how you read paragraph A-2. Your position then is a paragraph two notice isn't really a paragraph two notice if there was not a paragraph one notice that was compliant? That's correct. And where does that come from in the text of the statute? Two pieces. First is the word change, which as we've explained, we don't think encompasses the difference between TBD and March 15th. And the second is it's a change of the time and place of such proceedings. So again, this is my voter registration hypothetical. If you never filled out your voter registration form, your change of party affiliation form is not valid either. Your argument, I think, treats the following two people differently. And that might be just, well, yes, it does. And we're living in this world where this is a strange statute because the government has been out of compliance for so long and it leads to some kind of strange results. But I'll tell you that I think that this is a kind of strange result and I want to ask you to comment on it, which is one person gets a one notice that is perfect and it says January 15th. And then later gets a two notice saying, let's make it June 15th instead. Now, the second person gets a one notice that is perfect, except that it says to be determined. And then there's a later a two notice that says, OK, here's the new notice, June 15th. Now, I understand your view as to why the statutory text makes those two people different. But, you know, to go back to the chief justice's point about sort of, huh? Like, why are those two people in any different situations with respect to anything we care about? Why does one have the ability to reopen and the other does not? So, Your Honor, Congress is trying to address this problem in growth. So in an individual case, there may not be much of a difference. But in general, Congress found that these TBD provisions in the notice to appear. Remember, that's the one document that actually gets handed to the noncitizen, right? And so what Congress found is if you put a date and time in the notice to appear, there's at least one time when the noncitizen knows I have to be at immigration court, I can figure everything else out. If you only put a TBD in the notice to appear, what Congress found is the subsequent notices have a hard time getting to the noncitizen. And so the noncitizen never has a date and time certain they have to show up. I'm not sure that the statute does suggest that. I mean, the statute allows for, again, assuming you have perfect A1 notice, you can have an A2 notice and then you can have another A2 notice and another A2 notice. And all of these things are extremely difficult for any noncitizen to figure out. And the statute appears not to care about that. So why should the statute care about the difference between a to be determined and a certain date? So I think Congress assumes that the government would do its best to hold the hearing on the date in the NTA and only use the notice of change if it actually had to change the date. But you're right, in some cases, potentially, you know, a noncitizen who gets a TBD notice and a noncitizen who gets a notice with the date and time are similarly situated. But this court's holding in Pereira v. Chavez is, even if Congress's judgment was off on this, even if in many cases it doesn't make a difference, Congress has determined that what makes a valid NTA is the inclusion of these seven pieces of information, one of which the government didn't include here. I think the government's broad argument is it's very odd when someone gets notice of the time and date of the hearing and skips it. Intentionally, flouting the system, thumbing your nose at the system, and then comes back when they're caught and says, oh, that removal in absentia was no good. Why? Oh, because I didn't have notice of the time and date of the hearing when we know. So I think that's the government's kind of overarching concern about reading the statute your way. Sure, Your Honor. So I think that the problem is you can't just look at this provision in isolation, right? So what Congress thought it was doing was it was giving the government all the cards. If you don't want someone to skip the hearing, just put these seven pieces of information on the notice to appear, and then they can't skip the hearing. There are other places in the scheme that allow for consideration of exactly the kind of false analysis you're talking about. For instance, if you get to reopen your hearing, you may be ineligible for various forms of discretionary removal under 1229AB7 if you're that person who gets oral notice of the date and time of the hearing and just doesn't show up. As some of the justices have alluded to, there may be some residual discretion embedded in the may in B-5 that gives the IJ some discretion. All we're talking about is the eligibility criteria to even be able to file a motion to reopen. And at that stage, Congress didn't ask about notice generally, notice of the time of the hearing. It asked about notice in accordance with these two provisions that prescribe a particular format for the information. Thank you, Counsel. You said that Congress thought the government would do its best. I mean, as a practical matter, is it possible for the government to be able to put in the orders a time that they'll stick to? I mean, there's a reason they say, you know, TBA or TBD, right? And yet, you seem to think that we ought to analyze it as if the facts on the ground are not what they are, which may be right. I mean, if Congress doesn't like it, maybe they can change it. But it seems to me, at least in terms of practicalities, to say, well, they ought to put the time on when they issue the order. And if they don't, all these consequences are going to follow. The government makes the argument that, well, there are a lot, they're just not able to do that. And if there's a reading of the statute that makes more sense, or at least sense to deal with the situation on the ground, is that something we should consider? So I think the short answer is no, but I also want to push back on the premise of the question. So no, again, Pereira and Nez Chavez, the government gave you the same arguments. And this court said... Yeah, but, you know, Pereira and Nez Chavez, of course, dealt with an entirely different question. So push back. On the premise of your question, following Pereira, as my friend on the other side has told you, the government has been able to, in the mine run of cases, put dates and times in these notices. And the immigration judge's brief tells us that there was, until 2014, a scheduling system that, as far as these former immigration judges understand, had the ability to schedule these date and time of hearings. So that evidence, that prior to 2014, there was a scheduling system, post-Pereira, the government's been able to do it, strongly suggests that actually the government has had the ability to do this and has chosen not to, despite knowing, as this court put it, in Nez Chavez, since 1996, that this was a requirement. Do you have any idea how often when the government puts in an original time, that that time sticks or hasn't been extended later on? So I don't have those numbers, Your Honor. But I'll note that prior to 1996, Congress gave the government the option, said you could put the date and time in the order to show cause, which is the predecessor to the NTA, or somewhere else if you couldn't do it. And in 1996, Congress made the decision that it was no longer going to excuse the government from putting the date and time in the initial document. And it did that with a full understanding, the government testified at that hearing, of the logistical problems of doing so. Thank you. Justice Thomas? Justice Alito? If the date that the government puts in an NTA is sort of an aspirational date, but in a good percentage of those cases, they end up having to change the date, is that system better for non-citizens than a system that would tolerate the TBD in the initial NTA? So Congress made the determination it was better. And I think that's because of what I said to Justice Kagan, namely, the NTA is the document that's generally handed to the non-citizens, the one you know they got. And at the very least, if they have some date and time, they can come to immigration court and find out that their hearing was moved. Whereas if they have no information about when and where to show up, except for a document that's mailed, that may or may not reach them, then they may never clarify when. That doesn't really answer the question, because they may be handed a document, an NTA with an aspirational date. But if they are later sent a document with a change, mailed to the address that they provide, you know, they're in the same situation. So, Your Honor, I think that's precisely the argument that was made in dissent. You know, I know I'm not asking you about, I know I'm not asking you about Pereira and these Chavez. I'm not asking that they be overruled, even though... I'm asking you about what might make some bit of sense. But if you just want to say Pereira and these Chavez, we can leave it at that. Well, maybe I'll just cite the majority in the Chavez, which said that we think of another result is more likely still, which is that the government will develop its computer systems and technology to put forward dates that are likely to stick. Justice Sotomayor? All dates are aspirational. But in the mine run of cases, the first appearance, like the first appearance when you're arraigned, you don't accomplish much substantively. There is not decisions on whether you're going to be convicted or not at an arraignment, generally, unless you're going to plead guilty. But even then, time is usually given for people to confer with counsel and do other things. I'm assuming that this time, TBA, as you explained, is just the start of the process, correct? You show up on that day and you either say I'm going to get an attorney or you say I need more time to prepare or something else happens, correct? I think that's exactly right, Your Honor. So the reason you need that date is, for instance, to be able to get an attorney, right? It's clearer than that. So the point being that a system that continues with TBA does have all the damage you're saying. It doesn't tell people where they should go to find out if something has been changed or to direct, figure out where to hire a lawyer, given that I know that many of these TBAs are in jurisdictions different than where the alien was served, correct? I think that's exactly right, yeah. All right. So there's a lot of things to do that you can't do with it, don't happen with the TBA. That's exactly right. And again, Your Honor, Congress was replacing a prior system that did this kind of case by case. Did the non-citizen get enough analysis? Did the non-citizen get enough notice analysis? And what it said is rather than having that scheme where we're going to ask on a case by case basis, we're going to come up with a blanket rule that's much easier to administer. Yes, in some cases, it's going to be under-inclusive. Some non-citizens are going to be genuinely confused, notwithstanding the form. In some cases, it's going to be over-inclusive. Some non-citizens had all the information they needed, but the government didn't comply with the Texas statute. But Congress determined that a rule was better than the sort of fuzzy pre-1990 standard. Thank you. Justice Kagan, Justice Gorsuch. This morning, we heard some arguments from the government about policy. I had thought, as I read the briefs in this case, unlike Ms. Chavez and Pereira, that the government hadn't rested on policy arguments as a basis for ruling in its favor here. Am I mistaken? I think that because the plain Texas statute counsels in our favor, the government's strongest argument is about the consequences to the immigration system, which we don't deny. Did they make that in their brief? I believe they mentioned the hundreds of thousands of immigration cases in their brief as well. Fair enough. Thank you. And we're asked to weigh, in this discussion, seems to me summing up, at least in part, two difficult circumstances. One, on the other hand, a suggestion that it's harmless or might be absurd to require the government to fill in a TBD. Congress may have thought dates were important, but they're not that important. And on the other hand, the potential that an alien might be removed from the country in absentia without any notice of the charges against him, his right to an attorney, the facts of his case based on a compliant notice of change, which just says show up on a date certain. You don't know where it's coming from, necessarily, or who. And then clear and convincing evidence, in whatever form, that the government may supply in a non-adversarial proceeding inquisitorial proceeding before its own employee and immigration judge. How do we weigh those two consequential arguments? Sure, Your Honor. So I think the short answer is Congress has done that weighing for you. The date and time is situated no differently from the other information listed in paragraph one. But even if we were to do the weighing, as Your Honor noted, the first sort of downside is entirely within the government's control. The government can just put a date and time on the notice to appear as it acknowledged nearly 30 years ago, the statute required it to do. On the other hand, the non-citizen has no control over whether they get adequate notice. And so in the hypothetical you're talking about, where they're never told of the charges against them, they're removed in absentia without an opportunity to present their case before the immigration judge, that's a pretty draconian sanction. And there's a reason why Congress wanted to be in absentia removal orders in particular to be able to be reopened at any time if there's inadequate notice. It's because Congress thought that downside of someone being removed with inadequate notice was so draconian and so severe that it gave this remedy to non-citizens. Thank you. Justice Kavanaugh? You say inadequate notice, but they had notice. That's right, Your Honor. Again, Congress replaced the kind of reasonable notice or notice of the hearing regime with notice in accordance with paragraphs one or two, right? So Congress thought that rather than doing a kind of case-by-case determination, we're just going to ask if the government comply with these two paragraphs of the statute. And again, I thought that it was making things easier on the government rather than doing this kind of case-by-case analysis. We'll just let the government follow these precise instructions, put these seven pieces of information on a piece of paper, and we won't ask further. Congress was concerned, correct me if I'm wrong, about people not showing up for their removal hearings, right? That's exactly right. And so it's thought that the kind of reasonable notice, the sort of predecessor regime, gave too much leeway to immigration judges to say, well, this person was confused, this person got this document and not that document. And so what it wanted to do was make these in-center removal orders easier to obtain by giving the government all the power. Government, comply with the statute and we'll give you your removal order. And the noncitizen can't be heard to complain that the notice took here was confusing. Thank you. Justice Barrett? Why wouldn't a noncitizen show up if a noncitizen gets a notice that says, here's the time and place of your removal proceeding, and if you don't show up, the consequence is removal? So, Your Honor, I think the noncitizen does have every incentive to show up. Among other things, if they don't, ICE can come out and arrest them and bring them to the hearing. And the government can get  fairly straightforwardly. Even if they messed up the NTA the first time, all it takes is at that hearing, you know, they say, oh, the NTA is defective. Let me print it out again, fill in the date and time. Well, no, I understand there's incentives. I'm just talking about, like, when we're looking at the statutory language, I mean, Justice Alito pointed out the text of this provision. And I guess I'm just, you know, we're talking about the system that Congress set up. And I guess, Justice Kavanaugh just pointed out that the notice that's most pertinent, one might say here, because we can imagine, you know, things that don't really matter the Chief Justice gave you the hypothetical of, well, listen, maybe it said TBD, but now they know the notice and they know everything else. So let's just put aside whatever defect might have existed in the NTA. If the non-citizen knows the critical information, here's the date and here's the time. And if you don't show up, you will be removed. Even if the non-citizen has some questions, maybe that the NTA didn't answer, why would it be draconian for Congress to say that that person could then be removed in absentia if they didn't show up? So, Your Honor, Congress could have had that scheme, right? And again, pre-1996 had it. Okay, I understand that. But why? I understand your... Let's say that I disagree with your argument about the NTA. And let's say that I think that maybe the removal proceeding is the place where the non-citizen could register objections to the NTA that may well render the proceeding invalid. Why wouldn't it make sense? I mean, because you've made arguments about the coherence of the scheme and said it would be draconian. Why would it be if the alien has that information not show up? What would be the incentive other than it's just, as Kavanaugh said, just saying like, well, you know, I'm just not going to show up. And Ms. Chavez, this court said that the NTA is akin to the indictment in a criminal case, right? And in a criminal case, we don't say, just show up or else we're going to incarcerate. What would the incentive be? So you're saying there's no incentive, it's kind of a technicality. I don't think it's a technicality any more than the indictment in a criminal case is a technicality. So your whole argument really does turn on our interpreting A-1 the way that you're arguing that it has to have all of the information or it's totally invalid. That's your whole argument really hinges on that. I think that's right. And I think the practical reason for that is the non-citizen shows up to be prepared to defend against what, from whom, on what statutory basis. That can't possibly be the scheme Congress intended to have the non-citizens show up at a date and time on pain of in absentia removal without even knowing what they're going to have to argue over or why the government thinks that they're removable. The non-citizen could show up and say, I have no idea what the government is intending to proceed against me, so please, you know, I need to know. And at that point, the immigration judge, they may say the government has given completely inadequate notice and so can't proceed. Or the immigration judge, the statute's constraint against that happening is not just the immigration judge's discretion. It's you've got to do something like in a criminal case to let the non-citizen know what they're going to be facing when they show up. Justice Jackson? Yeah, can I just go back to Justice Kagan's question about the difference between a non-citizen who gets the complete NTA, one who doesn't, both get the change order that says come June 15th. You know, I was sitting here trying to figure out whether or not those people really are different. And I guess if both show up on June 15th, they're not different for the purpose of this scheme because there's no removal in absentia. If they come, they're actually having the hearing. Right? So we're not talking about a situation because the removal in absentia provision, one of the requirements is that the person doesn't show up. So we're not in the world of removal. Am I right about that? I think that's right. Although we, I think we would say that under paragraph one, which says that notice to appear shall be given in every removal proceeding. Yeah, the TBD person who shows up can still register Yes, yes, yes. But I'm just talking about with respect to the order of removal. Right. It will not be it's not going to be under an in absentia authority because the person is there and both of those people are there. So we don't have that difference. And then if they, if neither show up, then the removal order gets issued. And the difference is in whether or not one can move to reopen. The one who got all of the information can't and the one who didn't can. Is that right? I think that's right with the one caveat, which is that we don't think that an IJ should enter the removal order in the first place. Yeah, understood. But let's say they do. Right. Yes. The government, you know, convinces them to, even though the one who got the defective notice is there. The government, in both cases, the IJ issues the removal order and the difference then becomes that one can reopen, you would say, because they got all the information and the other one couldn't. All right. So my question, I guess, is there anything odd or strange about Congress trying to enforce or police its requirements of the government with respect to notice in that way? So the difference is one can move to reopen, one can't. And so why couldn't Congress say, you know what, we're going to allow the person who didn't get all the information to reopen because we want to make sure that the government puts all the information in their notices per the statute. I think that's exactly right. As Your Honor put the point earlier, the government gets a huge procedural advantage, right? It gets to remove someone without them ever getting a hearing. And in order to get that procedural advantage, the government needs to put the information in the statute that the statute requires. Right. So it's not really odd that they would be treated differently for that purpose if we're thinking that's what the Congress cared about, right? I think that's exactly right. All right. So then the second question that I have is about the government's concern about people not showing up and Justice Kavanaugh makes this point. And I take that point and I think that's right. But I wonder whether or not Congress actually is solving for that problem in a different way than the government is suggesting here, right? The way I read the statutory scheme, Congress is allowing people who don't show up and who have an order issued against them in absentia to actually move to rescind that order under certain circumstances. So it's not as though they say that we don't have a provision that allows the person who doesn't show up to do something. And the government here is saying, well, what about all the gamesmanship of the person not showing up? I think Congress says if you're going to remove, excuse me, if you're going to rescind, the burden is on you to show you never got the notice or that the notice was defective, you say, in this situation. The burden shifts to the person to get the order rescinded. And that's the way the Congress is solving for people gaming the system. I think that's exactly right. So it's not only the burden shifts to you. It's remember, the government can fix all of this. The cards are in the government's hands. The government can, you know, issue a new NTA that day and then you've got no remedy going forward. So it's a very risky, you know, if you imagine the hypothetical non-citizen who says, well, if I caught the government with a TBD in the notice to appear and I'm not going to show up, all the government has to do to fix that is at the hearing where the non-citizen doesn't show up, they print out the NTA again, they fill out the date and time, send it to the non-citizen, and then they can get that in a sentencing order. So it's a game that wouldn't get the non-citizen much benefit. And as your honor noted, the question of B5C2 is about policing the government, right? The provisions in B5C2 are, did the government turn square corners? Did the government issue notice? We see that in the other part of B5C2, which is about non-citizens in government custody. And there's a way to prevent the gamesmanship that we're worried about or that the government is worried about here. Because if you actually did receive the notice, you're not going to be able to resist. That's exactly right. The cards are all in the government's hands. They can prevent any gamesmanship. Thank you, counsel. Rebuttal, Mr. McCloud. Thank you, Mr. Chief Justice. I'd like to make one point about Pereira and then one point about the consequences of the other side's rule. As to Pereira, it is true that there are cases in this court where the court construes one statutory provision and that decision has the effect of resolving other statutory questions. Pereira is not that case. And it would be very strange to treat Pereira as such a case when Pereira went out of its way to say that its holding was narrow and was confined to particular statutory provisions that are not at issue in this case. So we don't think that Pereira resolves these cases, nor does New Chavez. Finally, as to the consequences, the consequences here are not just the number of motions to rescind that might be filed. The larger problem is that the other side's interpretation of these provisions deprives them of any sort of rational force. There's no reason that Congress would have enacted the version of the provision that Ms. Annan just described. And I don't think you need to look any further than the facts of these cases to see that. In these cases, the noncitizens got every single piece of information that they were required to get, not just under paragraph two, but also under paragraph one. They knew the charges, they knew the nature of the proceedings, and they knew that they had the right to counsel, and many of them had counsel. Mendez-Coleen's case, I think, is a perfect example. In Mendez-Coleen's case, by his own admission, the omission of time and place information in the paragraph one notice was irrelevant, and it was rendered irrelevant over and over again by the provision of additional notice. So to say that a provision whose evident purpose is about creating a defense based on lack of notice applies to individuals who had notice of all of the information required under the statute, I think is inconsistent with any rational understanding of what Congress was trying to achieve. Thank you. Thank you, counsel. Case is submitted.